UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRYSTAL CLARK, | ) Case No. CV 07-5340 PJW |
| Plaintiff, | ) |
| | ) MEMORANDUM OPINION AND ORDER |
| v. | ) |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

I

INTRODUCTION

Before the Court is Plaintiff's appeal of a decision by Defendant Social Security Administration ("the Agency"), finding that she was no longer entitled to supplemental security income as of March 29, 2004. For the reasons discussed below, the Agency's decision is REVERSED and the action is REMANDED for further proceedings consistent with this opinion.

II

STATEMENT OF FACTS

Plaintiff was born in 1976 and was 30 years old at the time of the administrative hearings. (Administrative Record ("AR") 42, 346.)

On June 10, 1988, when Plaintiff was 12 years old, she was hit by a car and suffered injuries to her head and abdomen. (AR 211, 215.) She was in a coma for three weeks after the accident and subsequently underwent extensive rehabilitation from July 6, 1988 to September 9, 1988. (AR 244, 270.) Thereafter, she returned to school, but her performance, which had been poor before the accident, was no better after. (AR 220.) Plaintiff was forced to attend special education classes and left school after the ninth grade. (AR 346-47.)

On May 18, 1994, Dr. Roger Izzi, a consultative neuropsychologist, examined Plaintiff and determined that she was mentally retarded. (AR 275.) In a Mental Residual Functional Capacity Assessment form completed on June 14, 1994, by another doctor, he or she determined that Plaintiff had learning difficulties, problems in maintaining attention and concentration, a verbal and performance IQ of 70, a full-scale IQ of 69, brain dysfunction, and emotional problems. (AR 76.) He or she determined that Plaintiff was not competent. That same day, the Agency determined that Plaintiff was disabled as of March 1, 1994, due to her mental deficits. (AR 80.) As a result, Plaintiff was awarded supplemental security income. (AR 80.)

On September 8, 2003, the Agency sent a letter to Plaintiff's guardian Lisa Johnson to inform her that the Agency was reviewing Plaintiff's case to determine whether she was still disabled. (AR 91-92.) On March 24, 2004, Ms. Johnson informed the Agency that she no longer had custody of Plaintiff and asked the Agency to make a decision about Plaintiff's condition based on the evidence already in the file. (AR 93.) On April 15, 2004, the Agency sent Ms. Johnson a letter informing her that Plaintiff had failed to provide certain

medical information that the Agency had requested.  The Agency further informed Ms. Johnson that it had determined that the evidence in Plaintiff's file was insufficient to establish that she was still disabled and, therefore, she was no longer eligible for benefits.  (AR 98, 149-52.)

On April 23, 2004, Plaintiff, through Renee Aldridge, whose relationship to Plaintiff was described as "payee," asked the Agency to reconsider its decision terminating her benefits.  (AR 99-108.)  On April 21, 2005, the Agency affirmed its decision.  It relied on a psychiatric evaluation conducted by Dr. Jason Yang, who found no evidence that Plaintiff suffered from cognitive deficits, perceptual disturbances, or delusional disorders, and that she could focus her attention adequately.  It also relied on the results of physical examinations that revealed that Plaintiff had no physical limitations precluding work.  (AR 153, 155-68, 161.)

On May 11, 2005, Plaintiff, through Ms. Aldridge, requested and was granted a hearing before an Administrative Law Judge ("ALJ").  (AR 176.)  Plaintiff appeared, without representation, at a hearing on May 2, 2006.  (AR 339-64.)  The ALJ informed Plaintiff that she could have an attorney represent her and asked her if she wanted to obtain counsel.  (AR 345-46.)  Plaintiff replied, "No.  Because I don't want to go through all that.  I really don't want to be here because I'm hurting, but I know I had to come so --."  (AR 346.)  The ALJ then proceeded with the hearing.

Plaintiff subsequently testified, in response to questions from medical expert Dr. David Glassmire, that she had been taking Risperdal, an anti-psychotic medication, since 2005.  (AR 350.)  Plaintiff testified that the Risperdal was prescribed by a Dr. Bustros

1 in Pasadena.  (AR 350.)  She also testified that she had been
2 prescribed Lexapro, an anti-anxiety medication, by a Dr. Farley.  (AR
3 351.)  There were no treatment records from either source in the
4 record.  (AR 351-53.)  After Dr. Glassmire suggested that it would be
5 useful to obtain Plaintiff's current treatment records, the ALJ told
6 Plaintiff that she needed to provide copies of those records within
7 two weeks and that he would hold a supplemental hearing at that time.
8 (AR 355, 356.)

9     Dr. Glassmire then testified that, based on the available
10 records, Plaintiff did not meet or equal a Listed Impairment.  (AR
11 357-59.)  He opined that under the "B" criteria of the listings, she
12 would have mild restrictions of activities of daily living, mild
13 difficulties maintaining social functioning, and moderate difficulties
14 maintaining concentration, persistence, or pace.  (AR 359.)  Dr.
15 Glassmire testified that Plaintiff would be limited to simple
16 repetitive tasks that were more objective-oriented and did not require
17 any significant abstraction, and to only occasional non-personal
18 contact with the public and coworkers.  (AR 359-60.)

19     When asked by the ALJ if she had any questions for Dr. Glassmire,
20 Plaintiff responded, "I don't know what none of it mean . . . I don't
21 understand."  (AR 360.)  The ALJ then "sum[med] it up" for her by
22 explaining:

23     [Dr. Glassmire] says that you have -- you have a problem, a
24     mental disorder.
25     . . .
26     You might have problems remembering.  But [Dr. Glassmire] says
27     that, that you have some limitations.  Namely, they're going to
28     result in you, you just really can only do simple things over and

     over again and you work better with objects rather than working
     with people.  And so you should have limited contact with other
     people.  That's basically what he said.
(AR 361.)

    The ALJ then told Plaintiff's cousin "Kathy," who had come to the hearing with Plaintiff to assist her and who had been waiting outside the hearing room, that she should help Plaintiff obtain all of the missing medical records within the next two weeks "[b]ecause there's a big gap in the record here."  (AR 363.)  The ALJ told Kathy that if she had any problems she should call and let him know.  Otherwise, he explained, if he did not receive the records or hear from Plaintiff that there was a problem obtaining them, he would just assume that there was nothing helpful for her in the medical records that were missing.  (AR 363.)

    On July 12, 2006, the ALJ held a supplemental hearing.  (AR 365-84.)  Plaintiff once again appeared without counsel, but brought a different cousin, Sherry Brent, to help her.  (AR 368.)  At this second hearing, Plaintiff told the ALJ that she had seen her psychiatrist the previous month, as well as another physician.  (AR 369-70.)  Ms. Brent also testified that Plaintiff suffered from anxiety attacks and bad headaches, which left her unable to cook or do household chores.  (AR 373, 375.)  The issue of the missing medical records was not discussed at the hearing.

    During the hearing, the ALJ questioned a vocational expert.  The ALJ asked the expert whether an individual who had some learning problems but could read and write basic English, would miss work once or twice a month, could not work at heights due to dizziness, should wear dark glasses in a bright room, should be limited to object-

oriented work involving simple, repetitive tasks, should have only occasional, non-personal contact with co-workers and supervisors, and must use a cane when she walks could perform any work. (AR 377-79.) The vocational expert testified that such an individual could work in electronics assembly, as a hand packer, and as a surveillance worker. (AR 377-80.) Plaintiff did not have any questions for the expert, but her cousin asked whether Plaintiff could perform this work even though she had a cyst on her right hand. (AR 380.) After the ALJ included a limitation on forceful gripping, grasping, or twisting in the hypothetical question, the expert testified that she could still perform the identified jobs. (AR 382-83.)

On September 15, 2006, the ALJ issued his decision, concluding that Plaintiff was not entitled to benefits. (AR 23-32.) The ALJ found that Plaintiff's condition had improved as of March 29, 2004, and that her residual functional capacity as of that date permitted her to work. (AR 25-31.) Plaintiff appealed to the Appeals Council, which denied Plaintiff's request for review on June 1, 2007. (AR 6, 18.) She then filed this action.

### III

### ANALYSIS

Plaintiff's sole claim of error is that the ALJ's failure to obtain a proper waiver of counsel from her at the administrative hearing rendered the proceedings unfair. (Joint Stip. at 4-7.) Plaintiff contends that the ALJ's own findings show that she suffers from significant mental deficiencies and could not effectively represent herself. She points out that she repeatedly told the ALJ that she did not know what was going on during the hearing but the ALJ did not stop the hearing or do anything to assist her. She argues

that, as a result of her inability to develop the record, all of her medical records were not introduced and were not considered by the ALJ. (Joint Stip. at 5-6.)

The Agency disagrees. It argues that Plaintiff knowingly waived her right to counsel. (Joint Stip. at 8.) It maintains that the ALJ fairly developed the record and properly found that Plaintiff was not disabled, but, instead, was malingering. For the following reasons, the Court concludes that the ALJ did not adequately protect Plaintiff's interests during these proceedings and remand is required.

Although a Social Security claimant has the right to be represented by counsel before an ALJ, the "[l]ack of counsel does not affect the validity of the hearing unless the [claimant] can demonstrate prejudice or unfairness in the administrative proceedings." *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985) (citing *Vidal v. Harris*, 637 F.2d 710, 713 (9th Cir. 1981)). Thus, the critical issue is whether the administrative proceeding was fair, not whether the claimant properly waived her right to counsel. *Vidal*, 637 F.2d at 713-14 (describing the ALJ's "heavy burden" to protect an unrepresented claimant's interests); *see also Higbee v. Sullivan*, 975 F.2d 558, 561-62 (9th Cir. 1992).

Moreover, while an ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered," *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (citation omitted), where, as here, a claimant is not represented by counsel, "it is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Higbee*, 975 F.2d at 561 (quoting *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978)); *see also Celaya v. Halter*, 332

F.3d 1177, 1183 (9th Cir. 2003).  The ALJ's duty to develop the record is further heightened where the claimant may have a mental impairment and is unable to protect her own interests.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *Higbee*, 975 F.2d at 562.  As explained below, because it is clear that Plaintiff was prejudiced by her inability to present her case and, further, because it appears that, as a result, the proceeding was unfair, the case is remanded for further consideration.

As a starting point, the Court finds that the record is clear that Plaintiff was unable to marshal the evidence she needed to present her case to the ALJ.  Plaintiff testified at the first hearing that her former psychiatrist, Dr. Bustros, had prescribed Risperdal, an anti-psychotic medication, for her in 2005.  (AR 350.)  She also testified that she had been prescribed Lexapro, an anti-anxiety medication, by her physician Dr. Farley.  (AR 351.)  Although the ALJ continued the hearing specifically so that Plaintiff could obtain treatment records from these doctors, no records were ever submitted and the ALJ did not even ask Plaintiff, or her cousin who was there with Plaintiff at the second hearing, why she had not produced the records.  The ALJ also failed to mention Dr. Bustros, Dr. Farley, or Plaintiff's claim that she had been taking anti-psychotic and anti-anxiety medication since 2005 in his decision.

The ALJ referred in his written decision to two letters from Plaintiff's clinical therapist at the San Bernardino Department of Behavioral Health, dated May 1 and May 15, 2006.  (AR 29.)  In the first letter, Plaintiff's therapist noted that a psychological assessment had been completed on her and that she had been scheduled for an appointment with a psychiatrist.  (AR 330.)  In the second

letter, evidently submitted after the first hearing but before the second, the therapist stated that Plaintiff had been diagnosed on May 15, 2006 by clinic psychiatrist Dr. Alfonso with Psychotic Disorder Due to Head Injury. (AR 333.) The letter also stated that Plaintiff experiences "severe headaches, and visual and auditory hallucinations," and that she had a previous suicide attempt in 2002. (AR 333.) The therapist wrote that Plaintiff would be seen and monitored monthly at the clinic. (AR 333.)

Although the ALJ gave a number of reasons for rejecting the opinion expressed in the May 15 letter, (AR 29), and apparently chose to ignore or disbelieve Plaintiff's testimony regarding Dr. Bustros and Dr. Farley, the fact remains that Plaintiff's failure to obtain additional records to support her allegations regarding her mental health treatment prejudiced her case. The Court notes that her failure to obtain these records may have been "due to the very factor that rendered [her] eligible for [Supplemental Security Income] benefits in the first place, [her] serious mental illness." *Higbee*, 975 F.2d at 561. Where, as here, a claimant who was "once found eligible for . . . benefits may be in danger of losing them because [s]he is too ill to act in [her] own best interests," the ALJ's duty to provide an adequate record is of "extraordinary importance." *Id.* at 562. Because the ALJ failed to close the "big" evidentiary gap that he identified in the records, (AR 363), the matter must be remanded for further development. Hopefully, Plaintiff will be represented by counsel at any future hearings and counsel can assist Plaintiff in gathering these records.

The Court also finds that Plaintiff was prejudiced by her evident inability to effectively represent herself at the administrative

hearings.  The transcripts from the hearings are replete with instances in which it is clear that Plaintiff is confused as to what was happening at the hearings and what, if anything, she was supposed to do or say.  For example, she was unable to cross-examine the vocational expert.  This inability was highlighted by the ALJ's failure to incorporate all of Plaintiff's limitations into the hypothetical questions he posed to the vocational expert.  At the May 2006 hearing, Dr. Glassmire testified that Plaintiff would have moderate difficulties in maintaining concentration, persistence, and pace, (AR 359), a finding the ALJ later adopted.  (AR 25.)  But the ALJ never included these limitations in the hypothetical question to the vocational expert and Plaintiff never followed up by posing a hypothetical that included those limitations. (AR 377.)  Instead, when the vocational expert testified that an individual with Plaintiff's limitations could perform the work of an electronics assembler, Plaintiff stated, "What is a electronical [Phonetic], whatever you all were saying.  What is that?"  (AR 383.)  After an explanation was offered, Plaintiff stated, "So you all want me to shock myself, kill myself with wires."  (AR 383.)  In the Court's view, the record demonstrates that Plaintiff was incapable of challenging the vocational expert's conclusions that she could perform the work he identified.  For this reason, too, the case must be remanded.  *See Vidal*, 637 F.2d at 714.

IV

CONCLUSION

For the reasons given above, the decision is reversed and the case is remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED:     January  13  , 2009.

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-CLOSED\Closed-Soc Sec\CLARK, C 5340\Memo_Opinion.wpd